IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

**SUEELLYN J. PEPPER**

       Plaintiff,

v.

**MICHAEL J. ASTRUE,**
Commission or Social
Security

       Defendant.

**No. 12-CV-3017-DEO**

**ORDER**

_____

## I.  INTRODUCTION AND BACKGROUND

This matter is before the Court on Plaintiff Sueellyn Pepper's [hereinafter Ms. Pepper] Complaint seeking disability benefits under 42 U.S.C. §§ 401 <u>et</u> <u>seq</u>. of the Social Security Act (the "Act").

## II.  FACTUAL BACKGROUND

Ms. Pepper was born in 1961.  She has a ninth grade education and is married.  Her claim for disability arises, partially, out of an injury she suffered while working as a certified nurses assistant (CNA) at Bethany Manor, in Story City, Iowa.  While working as a CNA, Ms. Pepper injured her back.  She subsequently returned to work, but re-injured her

back. She has been unable to work since the second injury which caused her to file the present claim for disability.

At the hearing, Ms. Peppers testified that she could not work due to back pain and depression. Tr. 31, 36. She had injured her back in July 2006 and September 2006, and had not worked since that date. Tr. 38. Her back pain impaired her sleep. Tr. 40. She had difficulty maintaining a single position. Tr. 40-41. Her back pain also impacted her concentration. Tr. 40, 45-46. Plaintiff's surgery helped the pain, but did not stop it completely. Tr. 40. Her legs "g[a]ve out on [her] a lot," which caused her to fall more often than when she had the back surgery. Tr. 40. Medication helped somewhat, but did not remove her pain. Tr. 41. Climbing stairs was painful. Tr. 42. Plaintiff could stand for about five minutes before needing to sit down, and she could sit fifteen minutes before needing to stand. Tr. 43. She could only walk a few feet at a time. Tr. 43. She had difficulty assisting with household chores. Tr. 44-45. Plaintiff reported her average pain level as ten on a ten-point pain scale. Tr. 45. Plaintiff stated that her

depression made her want to stay home, sit in her chair, and try to be comfortable.  Tr. 45.

## III.  PROCEDURAL HISTORY

Ms. Pepper alleged she became disabled on April 1, 2007. At the time Ms. Pepper became disabled, she was 45 years old. Tr. 17, 133.  The Social Security Administration denied the claimant's application initially and upon reconsideration. Administrative Law Judge (ALJ) Julie K. Bruntz heard Ms. Pepper's claim on November 29, 2010.  Following the administrative hearing, the ALJ denied Ms. Pepper's claim on January 25, 2011.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits.  20 C.F.R. § 404.1520.  The five successive steps are:  (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments

meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of his past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience," a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. §

404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20

C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and determined that Ms. Pepper had not engaged in substantial gainful activity since she alleged she became disabled. Tr. 19. The ALJ next found Ms. Pepper had one or more severe impairments, including status post laminectomy; depression; and well-controlled hypertension. Tr. 19. The ALJ further found these impairments did not meet or equal the Listings of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 19. In ascertaining whether she could return to her past work or any other work, the ALJ determined Ms. Pepper's residual functional capacity, finding:

> the claimant has the residual functional capacity to perform sedentary work such that she could lift twenty pounds occasionally and ten pounds frequently, but could stand/walk for only two hours of an eight-hour workday and could sit for six hours of an eight-hour workday. She can occasionally balance, stoop, crouch, kneel, climb ramps and stairs, and crawl. She can never climb ladders, ropes, or scaffolding.

> She will need to avoid heights and moving
> machinery. The claimant is limited to
> simple, routine, repetitive work.

Tr. 20-21.

The ALJ determined that, given Ms. Pepper's residual functional capacity, she was unable to perform her past relevant work. Tr. 24. The ALJ further determined that there was other work the claimant could perform, such as assembler of buttons and notions and egg processor. Tr. 25. As a result, the ALJ determined the claimant was not disabled and not entitled to benefits. Tr. 26.

After being denied initially, and while the current appeal was pending, Ms. Pepper filed a second application for social security benefits. Ms. Pepper filed her second application for social security benefits on March 30, 2010. Based upon the second application, the Social Security Administration found Ms. Pepper to be disabled as of January 26, 2011.

## IV.   STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole.

See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based in legal error. Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal

standard, it is within this Court's discretion to reverse his/her decision. <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## V. ISSUES

Ms. Pepper makes several arguments regarding her social security claim. First, she argues that the ALJ failed to properly evaluate all the medical evidence in the record. Second, she argues that the Appeals Council failed to consider the entire record, including evidence that was submitted after the ALJ's decision and the fact that Ms. Pepper subsequently received disability benefits. Finally, Ms. Pepper argues that the ALJ failed to properly consider her subjective complaints regarding her injury and her ability to work. The Court will consider each argument in turn.

## VI. LAW AND ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act (the "Act"). The Act defines disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment

which can be expected to result in death or
                    which has lasted or can be expected to last
                    for a continuous period of not less than 12
                    months . . . .

42 U.S.C. § 423(d)(1)(A).

   **A.  Medical Evidence**

     As noted above, this case largely arises out of an injury
Ms. Pepper suffered while working as a CNA.   Ms. Pepper
strained her back while attempting to lift a patient.   It is
undisputed in the record that Ms. Pepper suffered the injury
to her back.   The question involves the severity of Ms.
Pepper's disability as a result of the injury, and the affect
of other disorders associated with the injury, such as
depression and anxiety.

     The ALJ determined that Ms. Pepper could not return to
her previous work because of her injury.   However, the ALJ
determined, based on the medical evidence and the testimony of
the vocational expert, that Ms. Pepper could perform some work
and that there were jobs available in the local economy that
Ms. Pepper could perform.   Ms. Pepper argues that the ALJ
failed to examine all the medical evidence available.
Specifically, Ms. Pepper argues that the ALJ failed to

evaluate the opinions of Dr. Joseph Chen, regarding the source and degree of Ms. Pepper's pain, and the opinions of Ms. Pepper's treating physical therapist.

In her brief, the Plaintiff sets out the appropriate standard regarding the evaluation of medical testimony. Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, and others about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. SSR 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). The regulations set out in detail the analytic framework for evaluating medical opinions. See 20 C.F.R. §404.927. The Commissioner's rules provide that ALJs 'must always carefully consider medical source opinions about any issue." SSR 96-5p. The ALJ's residual functional capacity assessment must always consider and address medical source opinions. If the residual functional capacity assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p.

Additionally, if the medical evidence on record is inconsistent, an ALJ has a duty to weigh the evidence. 20 C.F.R. § 404.1527(c)(2). It is axiomatic that an ALJ shall refrain from "playing doctor." <u>Pate-Fires v. Astrue</u>, 564 F.3d 935, 946-947 (8th Cir. 2009). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1070 (8th Cir. 2004).

Dr. Chen evaluated in October 2009. The ALJ summarized that appointment by saying that:

> The claimant was evaluated by the University of Iowa Spine Center ... in October 2009. The claimant was assessed with primarily soft tissue, muscular pain of the low back and leg. Josephy J. Chen, M.D., opined that, "this pain does not require additional surgeries or injection but can be better managed and potentially improve with a strong commitment to a solid home exercise program and routine use of psychological pain management tools. ... Dr. Chen noted that it was essential the claimant begin increasing exercise biking or walking for twenty to forty minutes a day.

Tr. 22.

The Plaintiff argues that the ALJ incorrectly focused on the fact that Dr. Chen did not suggest additional surgery and

prescribed rehabilitative physical therapy, and ignored Dr. Chen's discussion of Ms. Pepper's pain and the physical therapist's work limitations. Specifically, Dr. Chen stated in his letter to Ms. Pepper that, "the low back and leg pain that you continue to experience is now primarily soft tissue, muscular pain. This type of pain is very real and can be very frustrating and uncomfortable as it interferes with your ability to participation [sic] in activities you enjoy and work related tasks." Tr. 570.

It is clear from the record that the ALJ failed to give proper weight to Ms. Pepper's pain, as substantiated by the medial opinions. As noted above, the ALJ focused on the fact Dr. Chen did not prescribe surgical intervention. However, the fact that a claimant does not require surgery is not evidence that no disability exists. Ms. Pepper correctly argues that it was inappropriate for the ALJ to focus on earlier medical opinions at the expense of later medical evidence. As noted above, an ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson, 361 F.3d at 1070.

**B.    Subsequent Evidence**

Ms. Pepper's second argument is that the Appeals Council improperly ignored evidence. he Appeals Council must consider additional evidence if it is new, material, and relates to a time period before the ALJ's decision.    20 C.F.R. § 404.970(b); see Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996).

SSA's Hearings and Appeals Law and Litigation Manual (HALLEX) Section I-4-2-30 provides:

> The claimant or another SSA component may submit additional materials to the [Appeals Council] at any time.  The materials may or may not be part of a subsequent claim that has been adjudicated.  If the claimant files a subsequent application after commencing a civil action on a prior claim, the adjudicating component . . . will limit its consideration to the period, if any, following the period undergoing judicial review. . . .  If the adjudicating component makes a favorable determination or decision on the subsequent application, it will request the effectuating component to forward the case to [the Office of Appellate Operations] after effectuation to determine the impact, if any, of the favorable determination or decision on the pending court case.

See HALLEX, available at:
    http://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-30.html
(last visited November 12, 2012).

After the ALJ's decision, Ms. Pepper submitted her claim to the appeals council for reconsideration. She also included a letter from Dustin Emberger, a licensed mental health counselor. Mr. Emberger opined that:

> Ms. Pepper and I met for an initial mental health evaluation on December 17, 2012. At that time, the diagnostic impression was that she was suffering from recurring major depressive disorder (moderate severity), generalized anxiety disorder, and panic disorder with agoraphobia. Treatment has focused on helping Ms. Pepper utilize cognitive behavioral techniques to address depressive symptoms an anxiety. .... My observations of Ms. Pepper, over the past 14 months, have been that she is experiencing an overall deterioration in both her physical and mental health. ... Currently, she is isolating herself at home, turns down invitations from her husband and her friends to do things that she previously enjoyed, and has expressed having suicidal thoughts off and on...These changes began well before she received notice that her claim had been denied. She was experiencing this deterioration in thinking, feeling, and behavior even as she had hope that a favorable decision might allow her access to health insurance that might allow her to attend the University of Iowa Hospitals and Clinics pain management program.

Tr. 686-87.

The Appeals Council concluded, without explanation, that "this information does not provide a basis for changing the

[ALJ's] decision." Tr. 1-2. This was an error. The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence submitted that relates to the period before the date of the ALJ's decision. Lamp v. Astrue, 531 F.3d 629, 632 (8th Cir. 2008); Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000); see 20 C.F.R.§ 404.970(b). The newly submitted evidence thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. See Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992).

In this case, it is clear that the ALJ would have benefitted from this evidence. It is likely that had the ALJ had the opportunity to consider this opinion, in light of the other evidence discussed above and below, that the ALJ's decision might well have been different. There is a distinction between acknowledging new evidence, and considering it. In this case, the Appeals Council acknowledged the evidence, but failed to consider it in light of the entire record.

A similar issue involves the fact that Ms. Pepper subsequently applied for, and received, disability benefits.

After the ALJ's decision (January 25, 2011), and prior to the Appeals Council's denial of review (January 6, 2012), the Commissioner issued a Notice of Award finding Ms. Pepper disabled as of the day after the ALJ's decision, January 26, 2011.  The Plaintiff argues that the Appeals Council should have considered the case file from Ms. Pepper's subsequent social security claim.

Ms. Pepper's attorney requested the subsequent claim file be made a part of the record in this case.  Tr. 257.  However, it is unclear that the Appeals Council obtained and reviewed the file.  Rather, the Appeals Council merely considered the 'fact' that Ms. Pepper had been awarded disability benefits. The Appeals Council stated that, "[a]lso the Appeals Council considered the fact that since the date of the Administrative Law Judge's decision, you were found to be under a disability beginning January 26, 2011. ..."

As noted by Ms. Pepper, "as part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."  42 U.S.C. §405(g).  The evidence from the

subsequent application, including the state agency medical and psychological consultant evaluations, has not been included in the Administrative Record and is therefore incomplete. The Social Security Commissioner must develop the record. In this case, that was not done. Not only did the Appeals Council fail to consider new medical evidence, it failed to consider the record upon which Ms. Pepper had been granted social security benefits. As discussed by one Judge recently:

> it is a specific responsibility of the Social Security Administration to consider all the evidence available. ... Once the Department of Disability Services determined the plaintiff's onset date of disability on his subsequent application, the Commissioner had a responsibility to send the favorable determination to the Appeals Council to determine whether it contained new and material evidence relating to the period that was before the ALJ on the first application.

Johnson v. Astrue, No. 1:05-cv-00004 (Mar. 31, 2006)(citations omitted).

Additionally, it must be noted that a number of Courts have found that a grant of benefits, in a subsequent application for disability benefits with an onset date in close proximity to the first application, is new and material evidence warranting a remand. Moraine v. Soc. Sec. Admin.,

695 F. Supp. 2d 925, 964 (D. Minn. 2010); citing Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) ("[W]here a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence."). During the hearing, the Government argued that there is a process where by the Appeals Council gets the record from the subsequent application. But there is no evidence in the record that the process they followed compelled them to examine the medical evidence that led to the subsequent award of benefits. As noted repeatedly by Ms. Pepper, the subsequent award of benefits began the day after the ALJ's determination. Ms. Pepper did not become disabled over the course of the 24 hour period separating those two days. Accordingly, medical evidence existed on the day the ALJ issued its decision that shows Ms. Pepper is disabled. That information was available to the Appeals Council, and should have been considered by it.

## C. Subjective Evidence

Finally, Ms. Pepper argues that the ALJ failed to give

proper weight to her subjective complaints about pain. "In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. See O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a whole bring those complaints into question." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ is not required to discuss methodically each consideration, so long as he acknowledges and examines those considerations before discounting the subjective complaints. Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000), citing Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In the ruling, the ALJ stated that:

> the objective findings in this case fail to
> provide strong support for the claimant's
> allegation of disabling symptoms and
> limitations. More specifically, the
> medical findings do not support the
> existence of limitations greater than the
> above listed residual functional
> capacity...The claimant experiences some
> symptoms and limitations; however, the
> record does not fully support the severity
> of the claimant's allegations. The
> claimant was treated for continued back
> pain; however, the treatment was primarily
> conservative. The Claimant was given
> medication and instruction for physical
> therapy. She was encouraged to be more
> active... questionable effort on testing
> and observation of pain behaviors bring
> into question the validity of the
> claimant's allegations....

Tr. 20-24.

As Ms. Pepper correctly argues, the ALJ's assertion that

her treatment was conservative is simply not true. Ms. Pepper

had surgery, injections, and took a variety of incredibly

strong pain medications. It is true she was recommended

additional therapy that she could not afford. But, as been

repeatedly stated, "[t]o a poor person, medicine that he

cannot afford to buy does not exist." Lovelace v. Bowen, 813

F.2d 55, 59 (5th Cir. 1987). It is not within the ALJ's

mandate to penalize people, of limited means, for making

strategic decisions regarding how they spend their limited resources.

It seems clear from the record that Ms. Pepper was in fact aggressive in treating her back pain, in spite of her limited means and increasing state of depression. The ALJ erred in failing to consider that evidence in light of the standard articulated above, regarding subjective complaints of pain. Substantial evidence does not support a determination that Ms. Pepper was not credible. In fact, substantial medical evidence in the record supports a determination that Ms. Pepper accurately described her physical state, her pain level, and her ability to work.

Additionally, the ALJ's determination that Ms. Pepper was not credible is necessarily subject to criticism, considering the fact that the very next day, the Social Security Administration determined that Ms. Pepper was, in fact, disabled. Stripping away the legal arguments, we have a situation where the ALJ said, in effect, that Ms. Pepper exaggerated her condition to get disability. The next day, the same organization said "yes, she is telling the truth and is disabled." While the subsequent determination of

disability does not affect this Court's legal analysis regarding the ALJ's credibility determination, it does validate this Court's determination that the ALJ's decision was not supported by substantial evidence.

## VII. CONCLUSION

It is clear the ALJ erred in a number of respects. The question then becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits. The Eighth Circuit has held that a remand for award of benefits is appropriate where "the record 'overwhelmingly supports'" a finding of disability. Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing Thompson v. Sullivan, 957 F.2d 611, 614 (8th Cir. 1992)).

In this case, the ALJ failed to consider medical evidence presented by Dr. Chen, which stated that Ms. Pepper's pain was very real. The ALJ incorrectly determined that Ms. Pepper was not credible regarding the extent of her pain. Then, the Appeals Council failed to consider the letter from Dustin Emberger, articulating Ms. Pepper's serious mental health issues. Finally, the Appeals Council failed to consider, in any detail, the medical record from Ms. Pepper's subsequent

disability claim, where she was awarded benefits. When the record is viewed in light of Ms. Pepper's credible testimony and the various medical opinions overlooked by the ALJ and the Appeals Council, it is clear that Ms. Pepper is disabled. Accordingly, the record overwhelmingly supports a finding of disability. This case shall be remanded solely for an award of benefits.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Pepper's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 8th day of January, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa